covered evidence.  On the motion for new trial an affidavit was presented showing that at one time when the petitioner testified his land was covered with water, the mouth of the tile was covered with water to a depth of eight feet, thus depriving the ditch of any outlet for a time.

We do not think that this evidence, if introduced, would be of sufficient weight to materially affect the merits of the case.

There being no material error in the record, the judgment of the Circuit Court is affirmed.

*Affirmed.*

---

### Paul Kuhn and Elizabeth Kuhn, Appellants, v. Cleveland, Cincinnati, Chicago & St. Louis Railway Company, Appellee.

#### (Not to be reported in full.)

Appeal from the Circuit Court of McLean county; the Hon. COLOSTIN D. MYERS, Judge, presiding. Heard in this court at the October term, 1913. Affirmed. Opinion filed December 27, 1913.

### Statement of the Case.

Action by Paul Kuhn and Elizabeth Kuhn against Cleveland, Cincinnati, Chicago and St. Louis Railway Company to recover damages for breach of four bills of lading for the transportation of four carloads of wheat from Ashmore, Illinois, to Chattanooga, Tenn. The declaration alleged that the defendant, through its agent, the connecting carrier, permitted an inspection of the wheat to be made at destination contrary to the terms of the bill of lading and that by reason thereof the wheat was rejected by the consignee to plaintiff's damage.  From a judgment against defendant for only nominal damages, plaintiffs appeal.

LIVINGSTON & BACH, for appellants.

GEORGE B. GILLESPIE, for appellee; J. P. LINDLEY and R. J. CARY, of counsel.

MR. JUSTICE ELDREDGE delivered the opinion of the court.

## Abstract of the Decision.

1. CARRIERS, § 188*—*when initial carrier liable for permitting connecting carrier to allow inspection of grain contrary to terms of bill of lading.* In an action against a railroad company to recover damages for permitting its connecting carrier to allow wheat shipped to a consignee to be inspected at destination contrary to the terms of the bills of lading, it being alleged that the inspection caused the consignee to refuse to accept the wheat, and plaintiffs, claiming a loss on the contract price after paying the freight and selling the grain at public sale after he had stored it in a warehouse for six months, *held* that defendant was bound to prevent the inspection but that plaintiffs were entitled to only nominal damages, it appearing that there was no complete sale of the wheat and that the inspection was not the promixate cause of any loss or damage suffered by plaintiffs.

2. SALES, § 67*—*place of inspection of grain.* Where a person orders grain of a certain grade through a broker to be consigned to him, where the custom and usage of the grain market permits buyers to inspect the grain before purchasing, such usage and custom becomes a part of the agreement to purchase, where nothing is said in the negotiations between the broker and the buyer regarding the inspection.

---

## George W. Tarr, Appellant, v. J. W. Stearman, Appellee.

1. SALES, § 422*—*when transaction is a conditional sale of an office rather than a contract for services.* An owner of a dentist office had employed a dentist on a salary to run the business. Afterwards the owner and the dentist entered into a written agreement whereby the dentist for a certain length of time was to manage the business, pay all the expenses, pay to the owner a certain

*See Illinois Notes Digest, Vols. XI to XV, same topic and section number.